# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCOTT HARRISON,<br>CDC #E-62612,<br><br>                              Plaintiff,<br><br>vs.<br><br>BONNIE DUMANIS,<br><br>                              Defendant. | Civil No.   06cv2470-RLH<br><br>**ORDER GRANTING MOTION<br>TO DISMISS AND DISMISSING<br>ACTION WITH PREJUDICE** |

Plaintiff David Scott Harrison (hereinafter "Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with a Complaint filed pursuant to 42 U.S.C. § 1983. (Docket No. 1.) Plaintiff was convicted of first degree murder in 1990, and claims that his federal due process rights were violated by the recent denial of his request, made pursuant to California Penal Code section 1405, for access to biological evidence found at the scene of the murder. The only relief sought is an injunction providing access to the evidence in order to subject it to deoxyribonucleic acid ("DNA") testing methods which did not exist at the time of his trial.[1]

Defendant Bonnie Dumanis (hereinafter "Defendant"), the District Attorney for the County of San Diego and the only remaining Defendant in this action, has filed a Motion to Dismiss the Complaint pursuant to FED.R.CIV.P. 12(b)(6). (Docket No. 8.) Defendant contends

---

[1] All other claims in the Complaint have been dismissed without leave to amend pursuant to the screening provisions of 28 U.S.C. § 1915. (See Order filed 1/9/07, Docket No. 5.)

1 | the Complaint fails to state a claim upon which relief may be granted because Plaintiff has no
2 | federal right of access to the evidence. Defendant alternately contends that even if Plaintiff has
3 | a federal due process right of access, he received all the process he was due through the
4 | procedures set forth in California Penal Code section 1405. Finally, Defendant contends that
5 | Plaintiff has failed to satisfy the requirements for obtaining injunctive relief.

6 |     Plaintiff has filed an Opposition to the Motion to Dismiss along with a separate
7 | Memorandum of Points and Authorities is support. (Docket Nos. 13-14.) Plaintiff argues that
8 | he has stated a federal due process claim under Osborne v. District Attorney's Office, 423 F.3d
9 | 1050 (9th Cir. 2005), and that his resort to state procedures has no bearing on his federal right
10 | of access to the evidence. Respondent has filed a Reply. (Docket No. 16.)

11 |     For the following reasons, the Court finds that even assuming Plaintiff has identified a
12 | federally-protected liberty interest in post-conviction access to potentially exculpatory biological
13 | evidence, he has failed to allege that he was deprived of such an interest. The Court therefore
14 | **GRANTS** Defendant's Motion to Dismiss. Furthermore, because it is clear that Plaintiff is
15 | unable to cure this pleading defect, the Court **DISMISSES** the Complaint with prejudice.

16 | **I.  Standard of Review**

17 |     A Rule 12(b)(6) motion tests the legal sufficiency of a claim. Navarro v. Block, 250 F.3d
18 | 729, 732 (9th Cir. 2001). Section 1983 imposes two essential pleading requirements upon a
19 | claimant: (1) that a person acting under color of state law committed the conduct at issue, and
20 | (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the
21 | Constitution or laws of the United States. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527,
22 | 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 328 (1986);
23 | Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

24 |     A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove
25 | no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355
26 | U.S. 41, 45-46 (1957); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996). In
27 | deciding such a motion, all material factual allegations of the complaint are accepted as true, as
28 | well as all reasonable inferences to be drawn from them. Cahill, 80 F.3d at 338. Dismissal is

proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). The court need not accept all conclusory allegations as true; rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusory allegations, unsupported by facts, have consistently been rejected as insufficient to state a claim under the Civil Rights Act.").

When resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). However, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by, Galbraith v. County of Santa Clara, 307 F.3d 1119, 1121 (2002).

## II.    Plaintiff's Allegations[2]

Plaintiff alleges that two hairs were recovered from the murder scene, one located on the arm of the murder victim and the other on the carpet immediately next to the victim, and that these hairs remain in Defendant's custody. (Memorandum of Points and Authorities in Support of Complaint ["Compl. Mem."] at 2.) Plaintiff states that although it was established prior to trial by comparison analysis that the hairs did not come from the victim, the hairs were never subjected to DNA testing. (Id. at 2-3.) He alleges that it has never been established who the hairs belonged to, and because they must have been left at the scene by the real killer, subjecting them to DNA testing could exonerate him of the murder. (Id.) He states that his request in state court for access to the hairs, made with the assistance of counsel pursuant to the provisions of California Penal Code section 1405, was recently denied. (Id.)

---

[2] Only the allegations with respect to Claim One in the Complaint are set forth here. The remaining claims were dismissed with prejudice in this Court's January 9, 2007 screening Order.

Plaintiff seeks an injunction directing Defendant Dumanis to provide him with access to the hairs for the purpose of subjecting them to DNA testing methods which were unavailable at the time of his conviction. (Id.) He relies on Osborn v. District Attorney's Office, 423 F.3d 1050 (9th Cir. 2005), as identifying the federal constitutional right which he alleges has been violated by Defendant Dumanis' refusal to provide access to the evidence. (Id.)

### III. Discussion

Defendant first contends that Plaintiff's reliance on Osborne is insufficient to satisfy the pleading requirement of alleging the deprivation of a federal constitutional right. Defendant argues that Osborne merely held that, to the extent a state defendant has a post-conviction federal due process right of access to potentially exculpatory evidence for purposes of subjecting it to DNA testing methods which were unavailable at the time of trial, such a claim is not barred by Heck v. Humphrey, 512 U.S. 477 (1994). Defendant argues that because the Court in Osborne "expressed no opinion" on whether a federal due process right of access to the evidence actually existed, no such right has ever been recognized in the Ninth Circuit.

The Ninth Circuit in Osborne permitted a section 1983 action to proceed to the extent it sought access to forensic evidence for the purpose of subjecting the evidence to methods of DNA testing which did not exist at the time of trial and which might exonerate the plaintiff. Osborne, 423 F.3d at 1054-56. The Court reasoned that mere access to such evidence for testing would not necessarily invalidate a conviction. Id. The Court stated, however, that: "We express no opinion as to whether Osborne has been deprived of a federally protected right, and leave that question to the district court to address in the first instance." Id. The district court on remand found that a narrow and limited due process right of access to evidence existed "under the unique and specific facts presented." Osborne v. District Attorney's Office for the Third Judicial District, 445 F.Supp.2d 1079, 1081 (D. Alaska 2006). The Court stated in that regard:

> Significant to this conclusion is the fact that the testing sought was *not* available to [Plaintiff] at the time of trial, the fact that the testing sought can be easily performed without cost or prejudice to the Government, and the fact that the test results can either confirm Plaintiff's guilt or provide evidence upon which Plaintiff might seek a new trial.

Id. (italics in original).

Defendant makes several arguments as to why <u>Osborne</u> is distinguishable from the present case. First, Defendant contends that Alaska, where Osborne was convicted, does not have a statutory procedure available for requesting access to evidence for the purpose of DNA testing, whereas California has codified a detailed procedure in California Penal Code section 1405. Thus, unlike <u>Osborne</u>, there is no need for the creation of a federal due process right for cases arising in California. Second, Defendant contends that even if a federal due process right of access to the evidence at issue here exists, Plaintiff resorted to California's procedures and thereby received all the process he was due. Third, Defendant argues that the plaintiff in <u>Osborne</u> sought access to evidence which had been used to identify him as the perpetrator of the crime, whereas the evidence sought by Plaintiff here is not alleged to have been used to obtain his conviction.

The Fourteenth Amendment to the United States Constitution provides that: "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. The Due Process Clause has two components, one procedural and one substantive. <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 125 (1992). The procedural prong provides "a guarantee of fair procedure in connection with any deprivation of life, liberty or property by a State." <u>Id.</u> The substantive prong "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" <u>Id.</u> (quoting <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986)). The Court will liberally construe Plaintiff's Complaint as alleging a denial of due process under both the procedural and substantive prongs of the Fourteenth Amendment.

**A. Procedural Due Process**

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972). State statutes and prison regulations may grant prisoners liberty or property interests sufficient to invoke due process protection. <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974) (noting that "the touchstone of due process is protection of the individual against arbitrary action

1  of government, . . . and the minimum requirements of procedural due process appropriate for the
2  circumstances must be observed.")). To state a procedural due process claim, Plaintiff must
3  allege: "'(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the
4  interest by the government; (and) (3) lack of process.'" Wright v. Riveland, 219 F.3d 905, 913
5  (9th Cir. 2000) (quoting Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993)).

6        The Court will assume for the purpose of the instant Motion to Dismiss that Plaintiff has
7  identified a liberty interest protected by the Fourteenth Amendment in having access to
8  biological evidence in order to subject the evidence to new methods of DNA testing unavailable
9  at the time of trial which might now exonerate him or provide a basis for seeking a new trial.
10 See Osborne, 445 F.Supp.2d at 1081. However, the resolution of the instant Motion does not
11 require the Court to answer the question left open by the Ninth Circuit in Osborne. Irrespective
12 of whether the liberty interest identified by the district court on remand in Osborne exists under
13 the facts of this case, the procedures outlined in California Penal Code section 1405 provide a
14 statutory framework giving rise to a nearly identical, but slightly broader, liberty interest. As the
15 Supreme Court noted in Meachum: "'A person's liberty is equally protected, even when the
16 liberty itself is a statutory creation of the state. . . . [and] the minimum procedures appropriate
17 under the circumstances [are] required by the Due Process Clause to insure that the state-created
18 right is not arbitrarily abrogated.'" Meachum, 427 U.S. at 226 (quoting Wolff, 418 U.S. at 557-
19 58, and citing Dent v. West Virginia, 129 U.S. 114, 123 (1889)).

20       Specifically, the procedures set forth in California Penal Code section 1405 provide that
21 any person convicted of a felony who is serving a term of imprisonment may make a written
22 motion before the trial court to request forensic DNA testing. Cal. Penal Code § 1405(a) (West
23 Supp. 2007). The procedures provide for appointment of counsel for indigent prisoners to assist
24 in the preparation of the motion, id. at § 1405(b)(1)-(4), even in cases where it is quite obvious
25 that testing of the evidence will not lead to exoneration of the defendant. In re Kinnamon, 133
26 Cal.App.4th 316, 323, 34 Cal.Rptr.3d 802, 806-07 (2005). Plaintiff states that he was appointed
27 counsel who assisted him in filing a motion pursuant to section 1405 seeking access to the
28 evidence at issue here, and that the motion was denied. (Compl. Mem. at 3.)

The California Penal Code provides that the court shall grant the motion for DNA testing if it is established that:

(1) The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion.

(2) The evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect.

(3) The identity of the perpetrator of the crime was, or should have been, a significant issue in the case.

(4) The convicted person has made a prima facie showing that the evidence sought to be tested is material to the issue of the convicted person's identity as the perpetrator of, or accomplice to, the crime, special circumstance, or enhancement allegation that resulted in the conviction or sentence.

(5) The requested DNA testing results would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the results of DNA testing had been available at the time of conviction. The court in its discretion may consider any evidence whether or not it was introduced at trial.

(6) The evidence sought to be tested meets either of the following conditions:

   (A) The evidence was not tested previously.

   (B) The evidence was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results.

(7) The testing requested employs a method generally accepted within the relevant scientific community.

(8) The motion is not made for the purpose of delay.

Cal. Penal Code § 1405(f)(1)-(8) (West Supp. 2007).

The substantive restrictions embodied in California Penal Code section 1405, requiring that access to evidence shall be provided when the foregoing provisions are satisfied, are sufficient to create a liberty interest protected by the Fourteenth Amendment. Meachum, 427 U.S. at 226; Wolff, 418 U.S. at 557-58; Rizzo v. Dawson, 778 F.2d 527, 530-31 (9th Cir. 1985); see also Sandin v. Conner, 515 U.S. 472, 483 (1995) ("The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum."). Thus, whether a liberty interest is created by state law or arises directly under the Due Process

Clause, the Court will assume Plaintiff has identified a liberty interest protected by the Fourteenth Amendment, the contours of which are discussed below.

Having identified a protected liberty interest, Plaintiff must further allege facts demonstrating that he has been deprived of that interest by Defendant's refusal to grant him access to the evidence at issue. Riveland, 219 F.3d at 913. Defendant argues that Osborne should be limited to its facts, and consequently any federal right of access to biological evidence is limited to evidence used to obtain a conviction.[3] Plaintiff argues that it is the exculpatory nature of the evidence sought to be tested which is important, and it is irrelevant whether it was used at trial.

The liberty interest assumed in Osborne is "a narrow one," predicated on the extraordinary scientific advancement in DNA analysis and its implication regarding exonerating falsely convicted individuals, and is limited to access to biological evidence for that purpose only. Osborne, 423 F.3d at 1054, citing Harvey v. Horan, 285 F.3d 298, 308-09 (4th Cir. 2002) (Luttig, J., respecting the denial of rehearing en banc) (identifying a "residual, core liberty interest protected by the Due Process Clause of the Fourteenth Amendment which, in certain, very limited circumstances, gives rise to a procedural due process right to access previously-produced forensic evidence for purposes of [subjecting them to new methods of] DNA testing."). The liberty interest created by California law is similarly circumscribed. For example, California Penal Code section 1405(f)(6) requires that either of the following conditions be met:

> (A) The evidence was not tested previously.
>
> (B) The evidence was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results.

Cal. Penal Code § 1405(f)(6) (West Supp. 2007).

---

[3] The Plaintiff in Osborne was convicted of kidnapping, assault and sexual assault based in part on sperm found at the crime scene which, based on PCR testing of Osborne's DQ-alpha locus, indicated that his DNA type is shared by between 14.7% and 16% of his racial population. See Osborne v. State, 110 P.3d 986, 989 (Alaska Ct. App. 2005). The new DNA testing methods sought by Osborne have the power to narrow that statistic from one in 6 or 7 to one in a billion. Osborne, 423 F.3d at 1052.

Plaintiff alleges the hairs were previously tested by comparison analysis but never subjected to DNA testing. (Compl. Mem. at 3.) The statute does not explicitly state that "previous testing" refers only to previous DNA testing, as opposed to other testing methods such as comparison analysis. It is therefore unclear whether section 1405(f)(6)(A) or 1405(f)(6)(B) applies to Plaintiff's claim. To the extent the "previous testing" language includes comparative analysis rather than the more sophisticated DNA analysis, section 1405(f)(6)(B) applies, and Plaintiff must allege that the DNA testing he now requests would provide results more discriminating and probative of the identity of the perpetrator. To the extent the language quoted above refers only to prior DNA testing, then section 1405(f)(6)(A) applies, and Plaintiff is arguably not required, as he would be under <u>Osborne</u>, to allege that new testing methods unavailable at the time of trial would now exonerate him. A determination as to which section applies here is unnecessary, however, because in either case the liberty interest arising under California law is limited to testing which "would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the results of DNA testing had been available at the time of conviction." Cal. Penal Code § 1405(f)(5) (West Supp. 2007). For the reasons set forth below, Plaintiff has not, and cannot, allege facts satisfying such a standard.

### 1. Liberty interest under <u>Obsorne</u>

Turning first to the liberty interest the district court in <u>Osborne</u> assumed would arise directly under the Due Process Clause of the Fourteenth Amendment, Plaintiff has not alleged facts which, if true, would raise a reasonable probability that the verdict in his trial would have been more favorable if the hairs were now subjected to methods of DNA testing which were unavailable at the time of his trial. This case is unlike <u>Osborne</u>, where the plaintiff sought to dramatically increase the accuracy of the finding that he was the donor of sperm which had been used at trial as strong evidence of his involvement in the crimes. Plaintiff here alleges that it has never been established who the hairs belonged to, and merely speculates that they must have been left at the scene by the real killer. (Compl. Mem. at 2-3.) However, he does not allege that new methods of DNA testing have given rise to a new opportunity to demonstrate his innocence.

Rather, Plaintiff contends now, as he did at trial, that the real killer was David Johnson, the person Plaintiff lived with before the murder, and whom Plaintiff contends committed suicide after being informed that Plaintiff had been convicted of the murder. (Id. at 6.) Plaintiff alleges that: "The two yet unidentified hairs most assuredly were left behind by the perpetrator of the brutal and very much hands-on murder." (Id. at 3.) He supports this conclusory allegation with references to cases where forensic evidence transferred to the victim from the killer was used to identify and convict the killer. (Id. at n.2.) Plaintiff had the ability at the time of trial to use comparison analysis or DNA testing methods then in existence to establish that the hairs belonged to Johnson, to eliminate Johnson as the donor, or to establish that they belonged to another potential suspect. As discussed below, this Court has previously addressed Plaintiff's claim that his trial counsel was ineffective for failing to compare the hairs with other suspected perpetrators, including Johnson. The Court concluded that even if Plaintiff could have established that the hairs belonged to Johnson, or to anyone else, there was not a reasonable likelihood that the outcome of his trial would have been different. For those same reasons, testing would not satisfy the Osborne standard of "either confirm[ing] Plaintiff's guilt or provid[ing] evidence upon which Plaintiff might seek a new trial." Osborne, 445 F.Supp.2d at 1081.

More importantly, the district court in Osborne clearly anticipated that the due process right at issue arose because of the possibility that a defendant can be exonerated by subjecting biological evidence to *new testing methods* unavailable at the time of trial. Osborne, 445 F.Supp.2d at 1081. Plaintiff has failed to allege that improved methods of DNA testing which did not exist at the time of his trial have now created an opportunity to exonerate him. This pleading defect is fatal to Plaintiff's procedural due process claim under Osborne. However, even assuming Osborne does not require a showing that the testing methods now sought to be utilized were unavailable at the time of trial, but merely that testing methods already in existence were not utilized at his trial, as the broader California procedures appear to permit, Plaintiff has not stated a procedural due process claim for the following reasons.

///

## 2. State-created liberty interest

In order to establish a liberty interest arising under California law, Plaintiff is required to allege that the DNA testing "would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the results of DNA testing had been available at the time of conviction." Cal. Penal Code § 1405(f)(5) (West Supp. 2007). To the extent the state courts have already made that determination in rejecting Plaintiff's request under section 1405, this Court is precluded by the doctrine of res judicata from revisiting that issue. Lucido v. Superior Court, 51 Cal.3d 335, 341 (1990) (identifying requirements for issue preclusion under California law); Bugna v. McArthur, 33 F.3d 1054, 1957 (9th Cir. 1994) (holding that federal courts must apply state law of collateral estoppel in determining collateral effect of state court judgment).[4]

Even were the Court not bound by the state court's determination, Plaintiff has previously filed a habeas petition in this Court pursuant to 28 U.S.C. § 2254 challenging his conviction. (See Harrison v. Helman, SO. DIST. CA CIVIL CASE NO. 97cv0749-JKS, Pet. filed 4/23/97 [Docket No. 1].) One of the claims raised in that petition was an ineffective assistance of counsel claim based on allegations that trial counsel failed to compare the hairs found at the scene of the murder to other possible perpetrators, including Johnson. (Id., Pet. Mem. [Docket No. 2] at p. 73.) That claim was denied based on a finding that Plaintiff "had failed to show a reasonable likelihood that the outcome of his trial would have been different if his counsel [had conducted the comparison testing]," and after determining that an evidentiary hearing on the issue was unnecessary. (Id., Report and Recommendation filed 12/3/98 [Docket No. 24] at 39; Order adopting Report and Recommendation filed 9/30/99 [Docket No. 41] at p. 8-9.) The denial of Plaintiff's habeas petition was affirmed by the Ninth Circuit. Harrison v. Helman, 54 Fed.Appx. 897 (9th Cir. 2003) (unpublished memorandum). Thus, even were the Court free to

---

[4] The Court is permitted to rely on the state court order denying Plaintiff's section 1405 motion because its contents are alleged in the Complaint. Tunnell, 14 F.3d at 454. However, neither Defendant nor Plaintiff has supplied the Court with a copy of the state court order. The Court has not ordered expansion of the record to obtain a copy of the order because the Court does not rely on issue preclusion for resolution of the instant Motion to Dismiss.

revisit the issue, it is clear for the reasons already discussed in rejecting Plaintiff's habeas petition that testing of the hairs would not satisfy the California standard of raising "a reasonable probability that, in light of all the evidence, [Plaintiff's] verdict or sentence would have been more favorable if the results of DNA testing had been available at the time of conviction." Cal. Penal Code § 1405(f)(5) (West Supp. 2007). In any event, the allegations in the Complaint reveal that Plaintiff received all the process he was due from the state when he was appointed counsel to assist him in preparing the motion for access to the evidence and received an order from the state court denying his request. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 16 (1979) (holding that when a state creates a liberty interest in parole release, the Due Process Clause requires only an opportunity to be heard and a statement of reasons for denial); Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (observing that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

### 3. Summary

Plaintiff has failed to allege facts indicating that he was deprived of a liberty interest arising directly under the Due Process Clause of the Fourteenth Amendment or as created by California Penal Code section 1405. The Complaint therefore fails to state a procedural due process claim. Furthermore, it is clear that Plaintiff is unable to amend his Complaint to cure the pleading defects of a procedural due process claim.

### B. Substantive Due Process

To the extent Plaintiff attempts to state a claim for violation of his substantive due process rights, it is also clear he is unable to do so. As the Court stated in Patel v. Penman, 103 F.3d 868 (9th Cir. 1996):

> "To establish a violation of substantive due process . . ., a plaintiff is ordinarily required to prove that a challenged government action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." However, "(w)here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing a plaintiff's claims.'"

Id. at 874 (citations omitted).

Plaintiff does not allege that the government's action in resolving his request brought pursuant to California Penal Code section 1405 was clearly arbitrary and unreasonable. Even if he could amend his Complaint to include such allegations, the Due Process Clause of the Fourteenth Amendment provides an explicit textual source of constitutional protection from the government's actions here. See U.S. CONST. AMEND. IV ("nor shall any state deprive any person of . . . liberty, without due process of law."). Accordingly, Plaintiff has not and cannot state a substantive due process claim.

## IV. Conclusion

Based on the foregoing, the Court finds that Plaintiff's Complaint fails to state a claim upon which relief may be granted. Defendant's Motion to Dismiss the Complaint (Docket No. 8) is therefore **GRANTED**. Furthermore, because it is absolutely clear that Plaintiff is unable to amend his Complaint to cure the defects of pleading identified in this Order, the Complaint is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

DATED: April 18, 2007.

ROGER L. HUNT, Chief Judge
United States District Court